# United States Court of Appeals for the Federal Circuit

---

**YISHAI QOYE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

---

2024-1690

---

Appeal from the United States Court of Federal Claims in No. 1:20-cv-01388-SSS, Judge Stephen S. Schwartz.

---

Decided: July 30, 2026

---

JASON W. MANNE, Manne Law Office, Pittsburgh, PA, argued for plaintiff-appellant.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by REGINALD THOMAS BLADES, JR., PATRICIA M. MCCARTHY, BRETT SHUMATE.

---

Before REYNA, TARANTO, and STARK, *Circuit Judges*.

REYNA, *Circuit Judge*.

Veteran Yishai Qoye challenges a decision of the United States Court of Federal Claims ("Federal Claims Court") upholding a Board for Correction of Naval Records ("Board") denial of military disability retirement, records correction, and the return of a reenlistment bonus. We determine that the Federal Claims Court's affirmance of the Board's adjudication of Mr. Qoye's eligibility for medical disability retirement was erroneous because it failed to address the requisite United States Secretary of the Navy Instruction ("SECNAVINST") 1850.4E § 3304 factors. We therefore vacate the Federal Claims Court's decision and remand to the Board for further proceedings consistent with this opinion.

### Factual Background

Mr. Qoye served in the United States Navy from November 2004 to September 2011. In 2008, he began a tour on the USS Eisenhower, a nuclear-powered aircraft carrier, as a nuclear machinist mate. During this assignment, Mr. Qoye struggled to stay awake. Fellow service members described Mr. Qoye as "consistently falling asleep in the middle of whatever it was that he was doing," including while standing watch or performing maintenance. SAppx71[1]; *see* SAppx68–87. Nonetheless, his performance evaluations did not reflect any interference of fatigue with his duties.

Mr. Qoye sought medical treatment from the Navy for his sleep issues in November 2009, and then again in June and July of 2010. It was not until September 2010 that the Navy conducted a sleep study of Mr. Qoye. This sleep study revealed that Mr. Qoye snored and possibly had sleep apnea. The study did not test for narcolepsy. The Navy did not perform a separate test for narcolepsy.

---

[1]    "SAppx" refers to the government's supplemental appendix filed at ECF No. 33.

Separately, in December 2010, Mr. Qoye was charged with failure to obey a lawful order and making a false official statement for falsifying a shipboard maintenance log. Mr. Qoye received non-judicial punishment ("NJP") for this misconduct in January 2011. Following his NJP, Mr. Qoye's supervisor requested removal of his Navy Enlisted Classification ("NEC") as a nuclear machinist mate, citing Mr. Qoye's "demonstrated unreliability and lack of integrity." SAppx94. Mr. Qoye alleges that the Navy removed his NEC in April 2011, although there is some dispute over whether such removal actually took place. Mr. Qoye then requested early separation[2] from the Navy, and in November 2011, he was honorably discharged with a narrative reason for separation of "reduction in force." SAppx623–25, 628 (capitalization altered). The Navy sought recoupment of a reenlistment bonus Mr. Qoye received because he failed to perform his duties through November 2012.

In 2012, Mr. Qoye sought treatment for fatigue at the Department of Veterans Affairs ("VA") and underwent another sleep study. This sleep study concluded that Mr. Qoye snored and ruled out a diagnosis of sleep apnea. But this time, Mr. Qoye also underwent a Multiple Sleep Latency Test that showed he suffered from symptoms consistent with narcolepsy. As a result, the VA assigned him a 40 percent service-connected disability rating for narcolepsy, effective the date of his discharge, October 1, 2011. One of Mr. Qoye's VA doctors documented that he

---

[2]    Mr. Qoye originally enlisted in the Navy on June 17, 2003. He signed a reenlistment contract on November 10, 2006 for a period of six years expiring November 9, 2012. Mr. Qoye was to receive a total reenlistment bonus of $38,458.19, which could be "recouped" if he was "no longer classified in [his] rating/NEC" or did not "serve the entire period of reenlistment." SAppx619.

"believe[d] it is a certainty that [Mr. Qoye] developed narcolepsy, or at least had a major worsening of the condition, while he was on active duty in the Navy." SAppx376.

PROCEDURAL BACKGROUND

In June 2015, Mr. Qoye petitioned the Board for correction of his service records to reflect that he was medically retired for narcolepsy and placed on the permanent disability retired list ("PDRL"). He also petitioned for retirement back pay, refund of his recouped enlistment bonus, and for his NEC removal characterization to be changed from misconduct to medically unfit. The Board found that the Navy failed to properly diagnose Mr. Qoye's narcolepsy during his service and, specifically, failed to refer him to a Medical Evaluation Board ("MEB") and Physical Evaluation Board ("PEB") for a fitness determination. The Board then forwarded Mr. Qoye's service records to an informal PEB for post hoc consideration.

In September 2017, the informal PEB found Mr. Qoye fit for continued naval service, noting that there was insufficient evidence in his service records to show that his health conditions "interfered significantly with [his] ability to carry out the duties of his office, grade, rank, or rating at the time of his separation." SAppx112. In reaching this conclusion, the PEB mistakenly relied on the medical records of another service member. After the error was discovered, the PEB reviewed the correct records and reached the same conclusion.

In October 2018, Mr. Qoye sought reconsideration from the Board regarding the informal PEB's determination that he was fit for service. He requested placement on the PDRL and a retroactive medical disqualification from his NEC. The Board requested comments and a recommendation from the Council of Review Boards ("CORB"), which issued an advisory opinion concluding the record did not support Mr. Qoye's requested relief. In April 2020, relying on CORB's recommendation, the Board denied Mr. Qoye's

request for reconsideration and upheld the informal PEB decision. The Board also determined that the Navy properly removed Mr. Qoye's NEC because of misconduct, and that liberal consideration did not apply to Mr. Qoye's claim because he had been honorably discharged.

In October 2020, Mr. Qoye challenged the Board's April 2020 decision in the Federal Claims Court. Complaint, *Qoye v. United States*, No. 20-1388 (Fed. Cl. Oct. 13, 2020), ECF No. 1. The Federal Claims Court granted the government's motion to remand the case to the Board and directed the Board to "address all issues and claims for relief" raised in Mr. Qoye's complaint. Order Granting Remand and Staying Proceedings, *Qoye v. United States*, No. 20-1388 (Fed. Cl. Jan. 10, 2022), ECF No. 31. On remand, the Board conducted a de novo review and issued a decision in April 2022. The Board upheld its prior determination, stating that "[t]he preponderance of the evidence simply does not establish that [Mr. Qoye was] incapable of performing the duties of [his] office, grade, rank or rating due to narcolepsy or any other condition." SAppx766. The Board again explained that Mr. Qoye lost his NEC because of his NJP, which was not the result of "the types of offenses which are mitigated or explained by a sleeping disorder like narcolepsy." *Id.*

In April 2024, the Federal Claims Court issued an opinion and order granting the government's motion to dismiss and for judgment on the administrative record. The Federal Claims Court affirmed the Board's decision that Mr. Qoye is not entitled to medical disability retirement as supported by substantial evidence. In particular, the Federal Claims Court pointed to the Board's consideration of Mr. Qoye's 2010 sleep study, his application to be a military mechanic in 2015, and his final three in-service performance evaluations as substantial evidence that Mr. Qoye was not unfit for duty. The Federal Claims Court also found that Mr. Qoye's claims for recoupment of his reenlistment bonus and for correction of his service record

were time-barred.  Mr. Qoye appeals.  We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## STANDARD OF REVIEW

We review a Federal Claims Court dismissal of a claim for lack of subject matter jurisdiction de novo.  *Res. Conservation Grp., LLC v. United States*, 597 F.3d 1238, 1242 (Fed. Cir. 2010).

We review decisions of the Federal Claims Court granting a motion for judgment on the administrative record de novo.  *Barnick v. United States*, 591 F.3d 1372, 1377 (Fed. Cir. 2010).  Under that standard, we will only overturn a Board decision if it is "arbitrary, capricious, contrary to law, or unsupported by substantial evidence."  *Id.*  A Board decision that fails to consider "the relevant factors" may be arbitrary and capricious.  *Bowman Transp., Inc. v. Arkansas-Best Freight Sys., Inc.*, 419 U.S. 281, 285 (1974); *Kelly v. United States*, 69 F.4th 887, 896 (Fed. Cir. 2023) (finding "Board's decision was arbitrary and capricious" where it "failed to consider all relevant criteria").

## DISCUSSION

Mr. Qoye raises two principal issues on appeal.  First, he challenges the Board's determination that he was not entitled to medical disability retirement because he was fit for duty at the time of his separation from service.  ECF No. 6 at 13–17.[3]  Second, Mr. Qoye argues the Board erred by failing to give his record correction requests liberal consideration consistent with the Kurta Memorandum.  *Id.* at 15.  We address each in turn below.

---

[3]    Mr. Qoye's Informal Brief is docketed at ECF No. 6.  As Mr. Qoye's Informal Brief is not consecutively paginated, we cite herein to the "Document" page numbers in ECF No. 6.

### 1.  Military Disability

#### A.

Military disability retirement is governed by 10 U.S.C. § 1201, which requires showing by a preponderance of the evidence that a disability was "incurred while entitled to basic pay" and renders a service member "unfit to perform the duties of [his] office, grade, rank, or rating."  10 U.S.C. § 1201(a).  If the military determines a service member meets these two requirements, "the Secretary may retire the member, with retired pay."  *Id.*  This inquiry is referred to as a "fitness determination."

The Navy has established its own policies and procedures for evaluating medical disability, including in the SECNAVINST and the U.S. Navy Manual of the Medical Department ("MANMED").  *E.g.*, SECNAVINST 1850.4E; MANMED, Ch. 18 – Medical Evaluation Boards (Jan. 10, 2005).  Under those policies and procedures, service members are referred to a PEB to determine their fitness for continued naval service.  MANMED, Ch. 18, Article 18-11, at 41.  This process is known as the Disability Evaluation System.

A service member is unfit for continued naval service if he cannot "reasonably perform" his duties because of a physical disability.  SECNAVINST 1850.4E § 3302.  The SECNAVINST instructs PEBs to "[c]onsider all relevant evidence," *id.* § 3303, including the following four factors set forth in SECNAVINST 1850.4E § 3304(a) (the "§ 3304 Factors"):

> (1)  Common Military Tasks.  The member, due to physical disability, is unable to reasonably perform the duties of his or her office, grade, rank, or rating (hereafter called duties) . . . .  For example, whether the member is routinely required to fire his or her weapon, perform field duty, or to wear load bearing equipment or protective gear.

(2) Physical Readiness/Fitness Tests.   The PEB will consider a member's case when the MTF determines that the medical condition prohibits the member from taking all or a portion of the PRT/PFT, and permanent increased bodily harm will result from taking all or a portion of the PRT/PFT.

\* \* \*

(3) Deployability. . . . Inability to perform the duties of his or her office, grade, rank, or rating in every geographic location and under every conceivable circumstance will not be the sole basis for a finding of Unfit.  When deployability is used by a service as a consideration to determine fitness, the standard must be applied uniformly to both the Active and Reserve components of that service.

(4) Special Qualifications.  Members whose medical condition causes loss of qualification for specialized duties, whether the specialized duties comprise the member's current duty assignment; the member has an alternate branch or specialty; or whether reclassification or reassignment is feasible, will not be the sole basis for a finding of Unfit.

MANMED also lays out certain physical and medical requirements that must be met for continued Nuclear Field Duty.  MANMED § 15-103.  According to § 15-103(1), nuclear field duty requires a "very high degree of reliability, alertness, and good judgment . . . for operations to be conducted safely and to maintain the integrity and accountability of these critical programs."  Section 15-103(4)(a) then sets forth that "[a]ny condition . . . which may impair judgment or alertness, adversely affect reliability, or foster a perception of impairment is disqualifying."  And under § 15-103(4)(d)(4)(c), "[s]leep disorders, which result in daytime fatigue, somnolence or inattention, are disqualifying."

B.

Mr. Qoye argues that the Board failed to consider important grounds for relief in reaching its determination that he was fit to perform his duties at the time of his discharge. ECF No. 6 at 2 (Question 4), 16; Reply Br. 11–18. Specifically, Mr. Qoye argues that the Board erred by failing to address the § 3304 Factors in violation of this court's *Kelly* decision, as well as the Nuclear Field Duty standards set forth in MANMED § 15-103.[4] We agree.

In *Kelly*, we considered a Board determination that sailor Matthew Kelly was fit to perform his duties as a Second Class Navy Diver at the time of his separation from service. 69 F.4th at 895. The Board's decision rested upon its evaluation of Mr. Kelly's final two performance evaluations. *Id.* Mr. Kelly's penultimate evaluation indicated he was "primarily performing the duties of a Second Class Navy Diver," including the "operation, maintenance, and repair of diving life support equipment," but did not

---

[4] The government contends Mr. Qoye waived these arguments. Inf. Resp. Br. 29; Oral Arg. at 18:40–50. Mr. Qoye was unrepresented before the Board and the Federal Claims Court, and he only obtained counsel in this appeal after filing his informal opening brief. This court may grant leniency to pro se litigants when considering whether an argument was properly raised for consideration. *E.g.*, *McZeal v. Sprint Nextel Corp.*, 501 F.3d 1354, 1356 (Fed. Cir. 2007) ("[T]he reviewing court may grant the *pro se* litigant leeway on procedural matters."); *see also Baker v. Raimondo*, 2022 WL 2114633, at *3 (Fed. Cir. June 13, 2022) ("[C]onsidering the leniency granted to pro se plaintiffs like [Appellant], we will consider the merits of his argument."). We do so here, especially where Mr. Qoye's arguments pertain to the Board's failure to follow its own binding policies and procedures.

provide any further detail about Mr. Kelly's duties. *Id.* (internal quotation marks omitted). Mr. Kelly's final evaluation reviewed his later tenure in a different position, "primarily performing the duties of a Maintenance Technician," not as a Second Class Navy Diver. *Id.* (internal quotation marks omitted).

We agreed with the Federal Claims Court that the Board's determination was arbitrary and capricious because it failed to evaluate "all relevant criteria enumerated in SECNAVINST 1850.4E § 3304." *Id.* at 896. We determined that the Board failed to sufficiently analyze "common military tasks" that Mr. Kelly encountered in his position. *Id.* For example, the Board failed to analyze whether Mr. Kelly's disability impacted his ability to "descend[] into the ocean at any depth and work[] in, among other conditions, hostile environments that include cold muddy water where tasks can be completed only by feel." *Id.* at 895–96 (internal quotation marks omitted). We also found the Board failed to consider entirely "whether [Mr. Kelly]'s medical condition affected his deployability or special qualifications as a Navy Diver." *Id.* at 896 (internal quotation marks omitted). We therefore agreed with the Federal Claims Court that the Board's decision should be vacated, and that the Board should, in the first instance, "address required findings" on remand. *Id.*

The Board here similarly failed to analyze whether Mr. Qoye's physical disability affected his performance of the common military tasks associated with his position. The Board never identified or discussed any common military tasks required of a nuclear machinist mate. SAppx766–67. Instead, the Board referred only to high-level capabilities listed in Mr. Qoye's past performance evaluations like assisting with "complex maintenance items" and "complet[ing] tasks with little to no

supervision."[5] SAppx767 n.9 (internal quotation marks omitted). The Board's failure to identify any common military tasks, and to assess whether Mr. Qoye could complete them, was arbitrary and capricious as failing to comply with § 3304.[6] *See Bee v. United States*, --- F.4th ----, 2026 WL 2050176, No. 24-2306, slip op. at 13–15 (Fed. Cir. July 16, 2026) (citing *Kelly*, 69 F.4th at 895–96). Thus, the Board's decision warrants vacatur and remand so that it may properly address common military tasks in the first instance.

The Board pointed to two other factors (aside from Mr. Qoye's past performance evaluations) in support of its

---

[5] Although the performance evaluations upon which the Board relied describe at least some of Mr. Qoye's "Primary," "Collateral," and "Watchstanding duties," such as "plant maintenance, cleanliness, preservation and operation of propulsion plant equipment in [the] Main Machinery Room," the Board never directly addressed these tasks or established them to be commensurate with Mr. Qoye's office, grade, rank, and rating. SAppx 640–42.

[6] The Board's failure to identify any duties expected of Mr. Qoye is also deficient under SECNAVINST 1850.4E, § 3301, which provides that fitness determinations are "considered by relating the nature and degree of physical disability of the member to the requirements and duties that member may reasonably be expected to perform in his or her office, grade, rank, or rating." *See Bee v. United States*, --- F.4th ----, 2026 WL 2050176, No. 24-2306, slip op. at 11 (Fed. Cir. July 16, 2026). This obligation cannot be passed on to the veteran. Here, there is no evaluation of "the requirements and duties" that Mr. Qoye "may reasonably be expected to perform in his [] office, grade, rank, or rating." It is incumbent upon the Board to supply at least a "clear statement . . . of the [service member's] duties." *Id.*

determination that Mr. Qoye was not unfit for duty: (1) that Mr. Qoye's 2010 sleep study resulted in "no limitations" placed on his duties; and (2) that Mr. Qoye applied to be a Marine Machinery Mechanic years after discharge. SAppx766–67. As an initial matter, neither alleviates the Board of its duty to identify common military tasks. And, further, neither provides substantial evidence for the Board's determination. Mr. Qoye's 2010 sleep study indisputably did not test for narcolepsy and therefore does not demonstrate whether narcolepsy affected Mr. Qoye's ability to perform the duties of his office, grade, rank, or rating. The Board also provided no explanation of the duties required of the "Marine Machinery Mechanic" position to which Mr. Qoye applied post-discharge, or how they compare to the duties of his in-service position. Without this analysis, the Board's conclusion that Mr. Qoye's application demonstrates that he "believed [himself] capable of performing the duties of the office, grade, rank, and rating that you held in 2012" becomes groundless. SAppx767.

The Board also failed to consider whether Mr. Qoye's narcolepsy affected his deployability. The government conceded as much at oral argument. Oral Arg. at 18:34–46, https://www.cafc.uscourts.gov/oral-arguments/24-1690_02 092026.mp3 (counsel confirming "[t]here is no specific mention of deployability" in the Board's decision). And the Board never discussed any special qualifications that Mr. Qoye may have obtained to become a nuclear machinist mate, and whether narcolepsy would affect such qualifications. *See id.* at 15:55–16:29 (when asked whether the Board "attended to [the particular standards for nuclear machinists,]" counsel for the government responded, "I don't believe that the Board specifically called out the explicit criteria or the standards for [Mr. Qoye's] particular job duty").

In this same vein, the Board failed to consider MANMED, which identifies certain medical conditions that are disqualifying for continued nuclear field duty.

*E.g.*, MANMED § 15-103(4)(d)(2). For example, § 15-103(4)(d)(4)(c) states that "[s]leep disorders, which result in daytime fatigue, somnolence or inattention, are disqualifying" for nuclear field duty. Under SECNAVINST 1850.4E, § 3303, the Board should have considered MANMED because it is relevant to the special qualifications inquiry.

Thus, we hold that the Board erred under § 3304 by failing to consider Mr. Qoye's common military tasks, deployability, and special qualifications, each of which was arbitrary and capricious and independently warrants vacatur and remand. On remand, the Board must consider these factors in making its fitness determination.

Mr. Qoye also requests certain other relief that is contingent on the Board's remand fitness determination. He seeks record correction of his NEC removal characterization and discharge narrative to reflect he was medically unfit, and repayment of his clawed-back reenlistment bonus. ECF No. 6 at 3. Effectively, Mr. Qoye argues that, had he been placed on the PDRL list for narcolepsy, he would not have lost his NEC for misconduct and the Navy would not have reclaimed his bonus. The Federal Claims Court dismissed both claims as outside its jurisdiction, determining they are time-barred under the six-year statute of limitations. 28 U.S.C. § 2501.

Section 2501 provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." A claim accrues "as soon as all events have occurred that are necessary to enable the plaintiff to bring suit." *Chambers v. United States*, 417 F.3d 1218, 1223 (Fed. Cir. 2005) (internal quotation marks omitted).

The Federal Claims Court determined that Mr. Qoye's claim for records correction accrued at the date of his discharge. It further determined that Mr. Qoye's claim for

recoupment of his reenlistment bonus accrued in 2011 "when the Navy removed his [NEC] and demanded repayment of the enlistment bonus." Thus, it determined both of Mr. Qoye's claims were time-barred. We disagree.

Typically, a claim for medical disability retirement "does not accrue on release from active duty, but rather on final action of a board competent to pass upon eligibility for disability retirement." *Friedman v. United States*, 310 F.2d 381, 395–96 (Ct. Cl. 1962); *see also Chambers*, 417 F.3d at 1226. But where a service member was not referred to a medical board prior to discharge, the claim "does not accrue until final action by the Correction Board." *Friedman*, 310 F.2d at 395–96; *see also Real v. United States*, 906 F.2d 1557, 1560 (Fed. Cir. 1990) ("[I]f the service member had neither requested nor been offered consideration by a retiring board prior to discharge, the later denial of his petition by the corrections board was the triggering event, not his discharge."). That's the case here.

There is no dispute that Mr. Qoye's claim for medical disability retirement was timely filed in the Federal Claims Court. Mr. Qoye's claims for records correction and recoupment of his reenlistment bonus are tethered to his claim for medical disability retirement. The Board could not correct Mr. Qoye's NEC characterization or discharge narrative to medically unfit absent a determination that Mr. Qoye was indeed medically unfit. And the Navy recouped Mr. Qoye's reenlistment bonus "as a result of his Navy Enlistment Classification removal and early discharge." SAppx6. Had Mr. Qoye instead been separated by reason of medical disability retirement, the Navy would not have recouped his bonus. DoD 7000.14-R Volume 7A, Table 2-1. Thus, Mr. Qoye can only prevail on these claims if the Board rules favorably on his medical disability retirement claim. We therefore conclude that the Federal Claims Court erred by determining it lacks jurisdiction over these claims. To the extent the Board determines on remand that Mr. Qoye was unfit for duty, it should also

reconsider Mr. Qoye's requests for records correction and bonus recoupment.

### 2.   Liberal Consideration

#### A.

Military correction boards, like the Board for Correction of Naval Records, "may correct any military record . . . when . . . necessary to correct an error or remove an injustice." 10 U.S.C. § 1552(a)(1). In August 2017, the Department of Defense ("DoD") issued guidance concerning review of discharges and military records known as the "Kurta Memo." Inf. Resp. Br. at 40–44. The Kurta Memo, recognizing that "[i]nvisible wounds" are "some of the most difficult cases [to] review," instructs military correction boards to apply "liberal consideration"[7] when assessing modification of a service member's discharge where the requested relief is due "in whole or in part to mental health conditions, including post-traumatic stress disorder (PTSD); Traumatic Brain Injury (TBI); sexual assault; or sexual harassment." Inf. Resp. Br. at 40–44. The metes and bounds of the "mental health conditions" eligible for liberal consideration under the Kurta Memo are not clearly defined.

Later in 2017, Congress codified "liberal consideration" in 10 U.S.C. § 1552(h), which requires military correction boards to apply liberal consideration to claims for correction of a military discharge relating to only PTSD or TBI stemming from combat or military sexual trauma ("MST"). We later clarified in *Doyon v. United States* that liberal consideration under § 1552(h) extends to consideration of not only discharge characterization, but also to the narrative reason for separation provided on a service member's discharge certification form (DD-214). 58 F.4th 1235,

---

[7]   The meaning of "liberal consideration" is not before the court in this appeal.

1247–48 (Fed. Cir. 2023). And we held in *Bee v. United States* that liberal consideration under § 1552(h) applies to both corrections to discharge narrative *and* the underlying fitness inquiry when a service member seeks to change the reason for discharge to medically unfit. ----F.4th----, 2026 WL 2050176, No. 24-2306, slip op. at 15–25 (Fed. Cir. July 16, 2026).

## B.

Mr. Qoye argues the Board erred by failing to apply liberal consideration to his request to correct the reason for his NEC removal and the narrative reason for his discharge on his DD-214 form. ECF No. 6 at 3, 15. Mr. Qoye sought, before the Board, to change his discharge narrative to medically unfit based on narcolepsy. *See, e.g.*, SAppx21 ("The Board noted that you claim you are entitled to liberal consideration with respect to a change to your discharge because narcolepsy is a mental health condition[]."). He argues the Board improperly found that liberal consideration could not apply to his request because he received an honorable characterization of service. *Id.* ("The Board found that liberal consideration as envisioned by the current guidance does not directly apply to your particular circumstances because you received an honorable characterization of service upon completion of your service obligation . . . ."). We agree with Mr. Qoye that the Board's rationale for determining liberal consideration does not apply to his request was improper.

According to the Kurta Memo, liberal consideration applies not only to upgrades to characterizations of service, but also to modifications to "narrative reason, separation code, and re-enlistment code." ECF No. 40 at 43. And under *Doyon*, liberal consideration under § 1552(h) also extends to requests for correction of narrative reason. 58 F.4th at 1248. Thus, having a fully honorable discharge characterization does not preclude liberal consideration. In Mr. Qoye's case, assuming narcolepsy qualified as an

eligible medical condition, he would be entitled to liberal consideration that his narcolepsy "contributed to the circumstances that ended his Naval career including the assumed withdrawal of his NEC Code," and could seek correction of his discharge narrative on that basis. Reply Br. 20.

As we note, however, Mr. Qoye must clear another hurdle to qualify for liberal consideration. He must demonstrate that he suffers from a condition eligible for liberal consideration. Mr. Qoye himself recognizes that narcolepsy does not fall within the eligible conditions listed in 10 U.S.C. § 1552(h). Instead, Mr. Qoye argues that narcolepsy falls within the bounds of the conditions covered by the Kurta Memo. Reply Br. 18–20.

Mr. Qoye argues that narcolepsy with cataplexy is a "mental disorder" akin to TBI, and that "[b]oth affect behavior." ECF No. 26 at 20; SAppx21. Mr. Qoye, however, points to nothing in the record to support this analogy. ECF No. 26 at 20. The Board did not address whether narcolepsy falls within the purview of the Kurta Memo. Resolution of this question is not for this court at this time—it is for the military to decide in the first instance. The Federal Claims Court's decision did not reach the issue of liberal consideration. Nonetheless, we instruct the Federal Claims Court to remand the issue of whether Mr. Qoye was entitled to liberal consideration for his request to change his discharge narrative to the Board for further development.

## CONCLUSION

We have considered the parties' remaining arguments and find them unpersuasive. For the foregoing reasons, we vacate the Federal Claims Court's affirmance of the Board's determination that Mr. Qoye was fit for continued duty at the time of his separation from service. We remand that issue to the Board for further development consistent with this opinion. We further remand to the Board the

issue of whether Mr. Qoye's record correction request is entitled to liberal consideration.

## **VACATED AND REMANDED**

### COSTS

Costs against the government.